IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal Action No. 16-cr-00267-LKG |
| | ) | |
| ADRIAN JAMAL SPENCE, | ) | Dated: March 21, 2025 |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER ON
THE DEFENDANT'S POST-CONVICTION MOTIONS**

Defendant *pro se*, Adrian Jamal Spence, has filed: (1) a motion to reduce his sentence, pursuant to 18 U.S.C. § 3582 and Amendment 821 (ECF No. 1839); (2) a motion to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A) and (B) (ECF No. 1856); and (3) a motion to appoint counsel (ECF No. 1858) in the above-captioned matter. The Defendant's motions to reduce sentence are fully briefed. ECF Nos. 1839, 1856, 1885 and 1905. No hearing is necessary to resolve these motions. *See* L.R. 105.6 (D. Md. 2023). For the reasons that follow, the Court: (1) **DENIES** the Defendant's motion to reduce sentence (ECF No. 1839); (2) **DENIES** the Defendant's motion to reduce sentence (ECF No. 1856); and (3) **DENIES** the Defendant's motion to appoint counsel (ECF No. 1858).

## I.    BACKGROUND AND PROCEDURAL HISTORY

The Defendant, Adrian Jamal Spence, is currently serving a sentence of 180 months imprisonment after having been convicted of one count of conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962. ECF No. 902.

In 2017, a Superseding Indictment charged Mr. Spence with one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962 (Count 1); and one count of felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count 7). ECF No. 515. On September 25, 2018, Mr. Spence pled guilty to Count 1. ECF No. 894.

<u>The Plea Agreement</u>

The parties stipulated in the Plea Agreement to a sentence of 180 months imprisonment,

pursuant to Rule 11(c)(1)(C).  ECF No. 1885-1 at 6.  As part of the Plea Agreement, Mr. Spence admitted to the facts as follows.

The Murdaland Mafia Piru ("MMP"), also known as the "Mob" or "Mobsters," was a violent subset of the Bloods gang that operated in Maryland and elsewhere from at least prior to 2011 until the date of the 2017 Superseding Indictment.  ECF No. 1885-1 at 11.  For many years, the MMP controlled the drug trade in large swaths of Northwest Baltimore City.  *Id*.

Mr. Spence was a member of the MMP during the dates of the racketeering conspiracy. *Id*.  In this role, Mr. Spence agreed with members of the MMP to conduct and participate in the gang's affairs through a pattern of racketeering activity that included offenses involving drug distribution.  *Id*.

On January 3, 2011, Mr. Spence threatened to kill a drug customer who owed him a drug debt.  *Id*.  On March 6, 2011, Mr. Spence exchanged text messages with a drug customer, in which he agreed to sell the customer 3.5 grams of heroin in exchange for a .380 caliber firearm and 50 rounds of ammunition.  *Id*.

On November 1, 2013, Mr. Spence was featured in an MMP rap video entitled "Str8 Mobbin" that was published on YouTube.  *Id*.  The rap video features Mr. Spence with Co-Defendant 1, Co-Defendant 2, Co-Defendant 3, Co-Defendant 4, and others rapping and making gang signs in MMP's drug territory in the 5200 block of Windsor Mill Road.  *Id*.  The lyrics include references to killing people who stand in the way of the gang, and members of the gang brandish firearms in the video.  *Id*. at 11–12.

In June and July 2015, investigators conducted a court-authorized wiretap of several cell phones belonging to Mr. Spence.  *Id*. at 12.  Mr. Spence was intercepted in numerous calls discussing drug distribution.  *Id*.  In this regard, on June 17, 2015, in wire calls D-171 and D-188, Mr. Spence agreed to supply 50 grams of heroin to Co-Defendant 5 for distribution.  *Id*. On June 20, 2015, in wire call D-270, Mr. Spence informed Co-Defendant 6 that he had just purchased a new supply of heroin and that a drug customer of his thought the quality of the heroin was "good . . . like an eight-and-a-half, nine."  *Id*.  Co-Defendant 6 told Mr. Spence he was working on getting a supply of the heroin.  *Id*.

In addition, on June 30, 2015, in wire calls D-483, D-484, D-485 and D-488, Mr. Spence agreed to supply Co-Defendant 7 with 12 grams of heroin for distribution.  *Id*.  On July 6, 2015, in wire calls D-660, D-663, D674, D-679 and D-680, Mr. Spence agreed to supply Co-

Defendant 7 with 20 grams of heroin for distribution. *Id*. On July 6, 2015, in wire call D-664, Mr. Spence agreed to supply Co-Defendant 8 with 40 grams of heroin for distribution. *Id*. In wire calls B-2384, B-2645 and B-3239, between July 6, 2015, and July 16, 2015, Mr. Spence agreed to purchase a firearm and ammunition from Co-Defendant 3. *Id*. On July 9, 2015, in wire call D-734, the Defendant agreed to supply Co-Defendant 5 with 100 grams of heroin for distribution. *Id*.

On July 20, 2015, a search warrant was executed at 532 Coventry Road, a known stash house used to store and package heroin that Mr. Spence supplied to other members and associates of the MMP. *Id*. During the search of the residence, law enforcement officers recovered approximately 608 grams of heroin, cutting agents, drug packaging materials, a digital scale and a hydraulic press. *Id*.

On July 23, 2015, in wire call G-232, Mr. Spence told Co-Defendant 6 about an attempted murder at the BP gas station on the 5200 block of Windsor Mill Road the previous night. *Id*. Mr. Spence explained that "Big Man [*i.e.*, Co-Defendant 1] and them was tryin' to really fix [the victim] up," but "while they fixin' him up," the "nig**s that was with him" began shooting back and "it was basically a shootout, for real. . . . Nig**s was really dumpin', for real." *Id*. Mr. Spence also advised Co-Defendant 6 that about ten minutes before the shootout, members of MMP had assaulted another individual because he was selling drugs on their turf. *Id*.

On July 30, 2015, in wire call G-396, Mr. Spence asked to purchase 50 grams of heroin for $4,000 from Co-Defendant 4. Co-Defendant 4 told the Defendant that Co-Defendant 8 was on his way to see a supplier, and he would let the Defendant know the price. *Id*. On July 31, 2015, a search warrant was executed at Mr. Spence's residence at 338 Marydell Road. *Id*. In the search of the residence, law enforcement officers recovered the following items belonging to Mr. Spence: an Israel .40 caliber firearm with serial number 34319036, loaded with nine rounds; fourteen cell phones; and $26,520 in U.S. currency. *Id*.

And so, Mr. Spence agreed in the Plea Agreement that he conspired with members of the MMP to distribute one kilogram or more of heroin and 280 grams or more of cocaine base in furtherance of the gang, and that it was reasonably foreseeable to him that between one and three kilograms of heroin and between 280 and 840 grams of cocaine base would be distributed by members of the conspiracy. *Id*. at 13.

Because Mr. Spence had recently been sentenced in a related case, a presentence report

was not prepared in this case and the parties agreed to rely on the presentence report prepared in connection with that case. *See United States v. Adrian Jamal Spence*, D. Md. RDB-15-0541, ECF No. 156 (the "PSR"); *see* ECF No. 1885 at 5. The PSR shows that Mr. Spence had a 2010 state felony conviction for controlled dangerous substance: possession with intent to distribute, which scored one criminal history point. *Id*. at ¶ 27. And so, the parties agreed in the Plea Agreement that "the Defendant is in Criminal History Category I based on one criminal history point." ECF No. 1885-1 at 5.

The parties agreed that the offense level for the racketeering conspiracy offense was 30, pursuant to U.S.S.G. § 2E1.1(a) and § 2D1.1(c)(5), and that there was a 2-level increase in the offense level, pursuant to U.S.S.G. § 2D1.1(b)(1), because the Defendant possessed a firearm. *Id*. at 4–5. The Defendant received a two-level reduction in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), bringing the total offense level to 30. *Id*. And so, based upon on an offense level of 30 and a criminal history category of I, the Guideline range was 97 to 121 months imprisonment. ECF No. 1885-2 at 25.

The Court held the sentencing hearing on September 25, 2018. ECF No. 895. During the sentencing hearing, the Court adopted the parties' Guideline calculations as set forth in the Plea Agreement and accepted the parties' stipulation as to the sentence. ECF No. 1885-2 at 15–25. And so, the Court sentenced the Defendant to 180 months imprisonment, which was above the Guidelines range. ECF No. 902.

In determining this sentence, the Court observed that the instant offense was "a very serious offense," which involved "not just a substantial quantity of drugs, which obviously is very serious and kills people and destroys people's families, but [it] also has a very serious element of violence." *Id*. at 35–36. The Court also observed that "there's clearly enough indication of violence and the use of weapons and involvement in a dangerous and violent drug-trafficking organization to require a serious sentence, a need for deterrence, and protecting the public" and that the Defendant "had a very significant role in this conspiracy." *Id*. at 36–37.

<u>Procedural History</u>

On December 15, 2023, the Defendant filed a motion to reduce sentence. ECF No. 1839. On August 6, 2024, the Government filed a response in opposition to the Defendant's motion. ECF No. 1885.

On May 24, 2024, the Defendant filed a motion to reduce sentence. ECF No. 1856. On

October 24, 2024, the Government filed a response in opposition to the Defendant's motion. ECF No. 1905.

On May 24, 2024, the Defendant filed a motion to appoint counsel. ECF No. 1858.

The Defendant's motions to reduce sentence having been fully briefed, the Court resolves the pending motions.

## II.    LEGAL STANDARDS

### A.    Compassionate Release

The United States Court of Appeals for the Fourth Circuit has held that a court "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception to this rule is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

In this regard, Title 18, United States Code, Section 3582(c)(1)(A)(i), commonly known as the "compassionate release" provision, provides a statutory vehicle to modify a defendant's sentence. *United States v. Wiggins*, 2020 WL 4436373, at *2 (D. Md. Aug 3, 2020). Section 3582 was adopted as part of the Sentencing Reform Act of 1984. *Id.* The statute originally permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). But, in December 2018, Congress significantly modified the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). Given this, the Court has held that, as amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a sentence of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. *Wiggins*, 2020 WL 4436373, at *2. And so, once a defendant has exhausted his or her administrative remedies, the defendant may petition this Court directly for compassionate release. *Id*.

Pursuant to Section 3582(c)(1)(A), the Court may modify a defendant's sentence if, "after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable," it

finds that:

    (i)       extraordinary and compelling reasons warrant such a reduction; or

    (ii)     the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

           and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. at *3.  And so, to be entitled to relief under Section 3582(c)(1)(A)(i), the defendant must demonstrate that: (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the United States Sentencing Commission (the "Commission") in U.S.S.G. § 1B1.13.  *Id.*  The Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A).  28 U.S.C. § 994(t).

      The Court may also reduce a sentence after it has been imposed where the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)."  18 U.S.C. § 3582(c)(2).  The Court may reduce such a sentence only "after considering the factors set forth in Section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*  In this regard, the Court employs a two-step approach.  "First, a court must determine the defendant's eligibility.  Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' § 3582(c)(2).  Second, the court may grant the authorized reduction 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'"  *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016) (citing § 3582(c)(2)).  "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion."  *Id.*

      Lastly, Part B of Amendment 821 to the Sentencing Guidelines amends U.S.S.G. § 4C1.1

to decrease a defendants offense level by 2 levels if the defendant is a "zero-point offender." U.S.S.G. § 4C1.1(a).  To be a zero-point offender, a defendant must satisfy the following criteria:

(1)   the defendant did not receive any criminal history points from Chapter Four, Part A;

(2)   the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3)   the defendant did not use credible threats of violence in connection with the offense;

(4)   the offense did not result in death or serious bodily injury;

(5)   the instant offense of conviction is not a sex offense;

(6)   the defendant did not personally cause substantial financial hardship;

(7)   the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8)   the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9)   the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

(10)  the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1(a).

## III.   ANALYSIS

The Defendant has moved to reduce his 180-month sentence of imprisonment, pursuant to 18 U.S.C. §§ 3582(c)(1)(A) and (c)(2) and Amendment 821, upon the grounds that he would receive a substantially shorter sentence if sentenced today and that the Court imposed a sentence above the applicable Guideline range.  *See* ECF Nos. 1839 and 1856.  And so, the Defendant requests that the Court reduce his sentence to 97 months.  *Id.*  In addition, the Defendant requests that the Court appoint counsel to represent him in this matter.  ECF No. 1858.

In its responses in opposition to the Defendant's motions, the Government argues that a

7

reduction in sentence is unwarranted, because: (1) the Defendant is ineligible for a sentence reduction under Amendment 821; (2) the Defendant has not exhausted his administrative remedies; (3) the Defendant is not eligible for compassionate release; and (4) the Section 3553(a) factors do not support a sentence reduction.  ECF Nos. 1885 and 1905.  And so, the Government requests that the Court deny the Defendant's motions.  *Id*.

For the reasons that follow, the Defendant has not shown that he is eligible for a sentence reduction under Amendment 821.  In addition, the Defendant has neither exhausted his administrative remedies, nor shown that he is eligible for compassionate release.  And so, the Court: (1) DENIES the Defendant's motion to reduce sentence (ECF No. 1839); (2) DENIES the Defendant's motion to reduce sentence (ECF No. 1856); and (3) DENIES the Defendant's motion to appoint counsel (ECF No. 1858).

### A.      The Defendant Is Ineligible For A Sentence Reduction Under Amendment 821

As an initial matter, the Defendant has not shown that he is eligible for a sentence reduction under Amendment 821.  Part B of Amendment 821 to the Sentencing Guidelines amends U.S.S.G. § 4C1.1 to decrease a defendant's offense level by 2 levels, if the Defendant is a "zero-point offender."  U.S.S.G. § 4C1.1(a).  To be a zero-point offender, the Defendant must satisfy the following criteria:

(1)    the defendant did not receive any criminal history points from Chapter Four, Part A;

(2)    the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3)    the defendant did not use credible threats of violence in connection with the offense;

(4)    the offense did not result in death or serious bodily injury;

(5)    the instant offense of conviction is not a sex offense;

(6)    the defendant did not personally cause substantial financial hardship;

(7)    the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8)    the instant offense of conviction is not covered by § 2H1.1 (Offenses

Involving Individual Rights);

(9)     the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

(10)    the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1(a).

As the Government persuasively argues in its response in opposition to the Defendant's motion to reduce sentence pursuant to Amendment 821, the Defendant has not shown that he is a zero-point offender and, thus, eligible for a reduced sentence. The undisputed factual record before the Court shows that the Defendant's Guideline range has not been lowered by the Sentencing Commission, which is required to be a considered "zero-point offender." U.S.S.G. § 4C1.1(a). Notably, the factual record shows that the Defendant received one criminal history point for a prior state felony drug conviction. ECF No. 1885-1 at 5 ("This Office and the Defendant agree that the Defendant is in Criminal History I based on one criminal history point"); *see also* ECF No.1885-2 at 16 ("You have an agreement with the Government that you would be in Criminal History Category I based on one criminal history point. . . "); *United States v. Adrian Jamal Spence*, D. Md. RDB-15-0541, ECF No. 156 at ¶ 27.

Given this, the Defendant is not a zero-point offender and he cannot seek a reduction of his sentence pursuant to Amendment 821.[1]  *See* U.S.S.G. § 1B1.10(a)(2)(B); *United States v. Nickens*, 668 F. App'x 20, 21 (4th Cir. 2016) (defendant not eligible for reduction where amendment does not have the effect of lowering applicable range); *United States v. Vance*, Case No. 2:22-cr-00057, 2024 WL 233467 (S.D.W.V. Jan. 22, 2024) (defendant not eligible for sentence reduction because she "was not a zero-point offender"); *United States v. Williams*, Case No. 3:22-cr-00008, 2024 WL 765896 (W.D. Va. Feb. 16, 2024) (defendant not eligible for sentence reduction even though he had zero criminal history points, because he used violence or

---

[1]The Plea Agreement in this matter also makes clear that the Defendant is not eligible for a reduction of his sentence pursuant to Amendment 821, because he admitted to using credible threats of violence in order to enforce drug debts and intimidate rivals and to possessing a firearm. ECF No. 1885-1 at 5, 11–12; ECF No. 1885-2 at 13.

credible threats of violence and possessed a firearm in connection with the offense). And so, the Court must DENY the Defendant's motion to reduce sentence based upon Amendment 821. ECF No. 1839.

**B.      The Defendant Has Not Exhausted His Compassionate Release Motion**

Turning to the Defendant's second motion to reduce sentence, the Defendant has also not shown that he is eligible for compassionate release. The Court may consider the Defendant's compassionate release request "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 582(c)(1)(A). While this so-called "exhaustion" requirement is a non-jurisdictional claims-processing rule, the Fourth Circuit has held that "the statute plainly requires [a defendant] to complete certain steps before filing his motion in the district court." *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). And so, if the exhaustion requirement is timely raised by the Government, the Defendant bears the burden of establishing that it has been met. *See, e.g., United States v. Sidhu*, Crim. No. 1:14-cr-00399 (RDA), 2021 WL 2894723, at *2 (E.D.V.A. July 9, 2021) ("Defendant, who bears the burden, has not demonstrated how he has exhausted his administrative remedies under § 3582(c)(1)(A)").

In this case, the Defendant has not shown that he submitted a compassionate release request to the warden of his facility prior to petitioning the Court for compassionate release. *See generally* ECF No. 1856. As the Government correctly observes in its response in opposition to this motion, the Defendant has attached as an exhibit to his motion for compassionate release an email message that appears to have been sent to a prison staff member "R. Stover" on April 15, 2024, requesting a reduced sentence. ECF No. 1856-1. But the response at the bottom of this message from prison staff member "R. Adamson," states that the Defendant's request "is incomplete" and attaches "a form for your convenience." *Id.*

The Government also represents to the Court that a search of the BOP's databases "found no records of [the Defendant] filing a request for Compassionate Release." ECF No. 1905 at 7. Given this, the Defendant has not met his burden to show that he exhausted administrative remedies before filing a motion for compassionate release. And so, the Court must also DENY this motion.[2]

_____

[2] The Government also argues with persuasion that the Defendant is not entitled to compassionate release,

IV.    **CONCLUSION**

For the foregoing reasons, the Court:

(1) **DENIES** the Defendant's motion to reduce sentence (ECF No. 1839);

(2) **DENIES** the Defendant's motion to reduce sentence (ECF No. 1856); and

(3) **DENIES** the Defendant's motion to appoint counsel (ECF No. 1858).

**IT IS SO ORDERED.**


s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

because the relief he seeks here attacks the validity of his sentence.  ECF No. 1905 at 8.